UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-02254-GPG

MELISSA BRANDAO,

                Plaintiff,

v.

HERDDOGG, INC.,
O'LEARY VENTURES MANAGEMENT, LLC,
WONDER FUND NORTH DAKOTA, LLLP,
LOU FAUST,
KEVIN O'LEARY,
PAUL PALANDJIAN,
ANDREW UDEN,
SHANE SCHULZ,
ROB SCHULTZ,
DEAN DIDATO,
EDWARD HAMBURG,
JASON WRONE,
JON MOYES,
JEFFREY MITCHEL,
SCOTT SHAMBO,
BETH HAMMAR,
and DOES 1-10,

                Defendants.

**THE HERDDOGG DEFENDANTS' MOTION TO STAY DISCOVERY**

Defendants HerdDogg, Inc., Lou Faust, Andrew Uden, Shane Schulz, Rob Schultz, Edward Hamburg, Jason Wrone, Jon Moyes, Jeffrey Mitchel, Scott Shambo, and Beth Hammar (collectively, the "HerdDogg Defendants") hereby move to stay all discovery pursuant to Fed. R. Civ. P. 26(c) and Civ. Practice Standard 7.1A(a)(5) pending resolution of their Motion to Dismiss, and in support state as follows:

***D.C.Colo.LCivR 7.1 – Conferral Statement***

Counsel for the HerdDogg Defendants (Andrew P. Shelby and Carolyn E. Isaac) conferred by phone with Plaintiff's counsel (John Oleske) on October 21 and November 6, 2025. Plaintiff opposes the relief requested.

***Summary of Argument***

The HerdDogg Defendants are the only Defendants before the Court. Five other Defendants do not appear to have been served.

Concurrently with this Motion to Stay, the HerdDogg Defendants are filing their Motion to Dismiss. The Motion to Dismiss seeks dismissal of all claims against the HerdDogg Defendants on a variety of grounds, including that: (a) the RICO claims are barred by the statutory securities-fraud exception; (b) Plaintiff lacks standing to bring the RICO claims; (c) absent the RICO claims, there is no personal jurisdiction over several defendants; (d) the statute of limitations has run on nearly all of Plaintiff's claims; and (e) Plaintiff's claims suffer other fatal and uncurable pleading deficiencies.

Based on these arguments, it is more likely than not that the Court will rule in the HerdDogg Defendants' favor on some, if not all, of the Motion to Dismiss. That could, at minimum, result in Plaintiff's RICO claims being dismissed with prejudice and several of the HerdDogg Defendants being dismissed for lack of personal jurisdiction. Further, the other Defendants may be dismissed for lack of service or, if they are served, based on their own motions to dismiss that raise similar arguments. In short, the scope of the claims and identity of the parties remain unknown and will likely change based on future dismissal rulings.

As explained below, this is primarily due to Plaintiff's own delay and improper

2

pleading tactics. Because any discovery before the Court's ruling on the Motion to Dismiss will prove wasteful and unnecessarily burdensome on all parties, the Court should stay discovery until the Motion to Dismiss is resolved.

## Background

***The Complaint and Its Allegations.*** Plaintiff Melissa Brandao filed a fifty-four-page Complaint alleging claims against sixteen named defendants and ten unnamed defendants, including the eleven HerdDogg Defendants. (Dkt. 1.) The lawsuit arises from a so-called "investment fraud" scheme. Plaintiff alleges that, first, the HerdDogg Defendants accessed her email account or computer and forged her electronic signature on documents that assigned two of her patents to HerdDogg without her knowledge or consent. (*Id*. ¶¶ 59-105.) We will refer to this as the "Alleged Forgeries."

Plaintiff also alleges that, after the Alleged Forgeries, Defendants fraudulently marketed HerdDogg's A3 and A4 Fundraising Series by misrepresenting to potential investors that HerdDogg owned the patents. (*Id.* ¶¶ 88-89.) They also allegedly submitted "false or misleading statements" to North Dakota to "secure funding" and "to induce investment." (*Id.* ¶¶ 109, 117.) This all left "public and private investors defrauded." (*Id.* ¶ 101.) We will refer to this as the "Alleged Investment Fraud."

The Alleged Forgeries occurred in May and December of 2021. (*Id*. ¶¶ 60, 68.) Plaintiff alleges that she learned of them in December 2023. (*Id*. ¶ 104.) But Plaintiff waited a year and a half before filing her Complaint on July 22, 2025. (*Id*.)

***The Motion to Dismiss.*** The HerdDogg Defendants are filing an omnibus Motion to Dismiss concurrently with this motion that seeks dismissal of all fifteen claims against them, including claims related to: RICO (Counts I–III), the Computer Fraud and Abuse

3

Act (Counts IV–VII); patent infringement (Count VIII); the Colorado Organized Crime Control Act ("COCCA") (Counts IV–XI); civil theft (Count XII); conversion (Count XIII); fraud (Count XIV); and declaratory judgment (Count XV). (*Id.*) The Motion to Dismiss argues, among other things, that:

    1.    The RICO claims should be dismissed with prejudice because: (a) they are barred by the statutory securities-fraud exception; (b) Plaintiff lacks specialized "RICO standing" under Supreme Court precedent and ordinary standing; (c) Plaintiff includes candidate predicate acts that are not recognized as predicate acts by the RICO statute, and she alleges others that are not cognizable under the facts alleged; and (d) Plaintiff fails to satisfy multiple pleading requirements for RICO claims;

    2.    The statute of limitations has run for thirteen of the fifteen claims at issue, including the RICO claims, based on the Complaint's allegations and publicly filed USPTO documents of which the Court can take judicial notice;

    3.    The Court will lack personal jurisdiction over several non-resident Defendants if the RICO claims are dismissed because the RICO claims are the only ones that allow for nationwide jurisdiction;

    4.    The alleged wrongdoing did not occur in Colorado, and thus this is the improper venue to litigate; and

    5.    The other claims fail for a variety of pleading shortfalls, including some that cannot be cured, for example, the patent claim does not allege that Defendants sold any goods using the Patents and the COCCA claims are not based on conduct that occurred in Colorado even though COCCA lacks extraterritorial effect.

In sum, the Motion to Dismiss advances numerous colorable arguments that will significantly narrow the number of claims and defendants that will proceed forward.

**The Status of Service of the Remaining Defendants.** As of this Motion, and to the best of our knowledge, the five remaining non-HerdDogg Defendants—Kevin O'Leary, Paul Palandjian, O'Leary Ventures Management, LLC, Wonder Fund North Dakota, LLLP, and Dean Didato (collectively, the "Other Defendants")—have not been served with the Complaint. Indeed, Plaintiff sought summonses with incorrect captions for several of

4

the Other Defendants on October 17 (Dkt. 8 & 9), October 20 (Dkt. 11 & 12), and twice on October 21 (Dkt. 15–18). Finally, Plaintiff obtained summonses for some of the Other Defendants on October 23 (Dkt. 19)—some ninety-three days after she filed this case.

***The Pleadings and Discovery.*** No discovery plan has been entered, and the only responsive pleading before the Court is the HerdDogg Defendants' Motion to Dismiss. Plaintiff's response brief to the Motion to Dismiss will be due just two days after the upcoming December 3, 2025 scheduling conference, meaning that briefing on the Motion to Dismiss will likely conclude around the time discovery would otherwise begin. (Dkt. 20.)

*Argument*

I.   **Legal Standard**

Courts in this District consider the following factors when addressing a motion to stay: (a) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to the plaintiff of a delay; (b) the burden on the defendants in going forward; (c) the convenience to the Court; (d) the interests of persons not parties to the civil litigation; and (e) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). Stays are appropriate where jurisdiction is challenged. *Id.*; *Mariani v. Titeflex Corp.*, 2013 WL 6688966, at *1-2 (D. Colo. Dec. 19, 2013) (collecting cases); *cf. Wyers Prods. Grp. v. Cequent Performance Prods., Inc.*, 2013 WL 2466917, at *2 (D. Colo. June 7, 2013) ("[S]tays are generally favored when a jurisdictional defense under Rule 12(b)(1) is asserted.").

No element of the *String Cheese* factors requires that the Court make a preliminary determination as to the likelihood of success of either the dispositive motion or the ultimate merits of this case. *Sexton v. City of Colorado Springs*, 2020 WL 1875146, at *4

5

(D. Colo. Apr. 15, 2020). However, when one issue may be determinative of a case, courts have discretion to stay discovery on other issues until the critical issue has been resolved. *Hernandez v. Asset Acceptance, LLC*, 970 F. Supp. 2d 1194, 1205 (D. Colo. 2013).

As explained in the sections below, each of the *String Cheese* factors weighs in favor of a discovery stay.

## II.  Factor One: Plaintiff Has Not Shown A Strong Interest In Proceeding Expeditiously And Will Not Be Prejudiced By A Stay

Although every plaintiff has a general interest in proceeding to the merits of their case, Plaintiff has not demonstrated a specific interest in expeditiously litigating her claims, and she would not be prejudiced by a discovery stay. *See Wyers Prods. Grp.*, 2013 WL 2466917, at *3. To the contrary, she has been dilatory.

For starters, Plaintiff contends that she learned of the Alleged Forgeries in December 2023. (Dkt. 1 ¶¶ 60, 68, 104.) However, several of the documents relating to that claim had been on file with the USPTO since 2021 and the final one since February 2023. (*See* Motion to Dismiss, Argument Sec. IX.) And, notwithstanding her allegedly delayed knowledge, Plaintiff still waited an additional year and half after December 2023 to file her claims. (*Id.*)

Plaintiff's delays also extend beyond the initiation of this lawsuit. Plaintiff filed suit on July 22, 2025. Plaintiff did not send a Rule 4 waiver of service form to the HerdDogg Defendants until September 15, 2025. She still has not filed the executed waiver forms. And Plaintiff did not file proposed summonses for some of the Other Defendants until October 17. (Dkts. 8 & 9.) These contained errors, and the Court rejected them for violations of D.C.COLO.LCivR 5.1(a), prompting administrative notices and several other failed attempts before Plaintiff submitted proper summonses on October 23. As far as the

6

HerdDogg Defendants know, those summonses remain unserved.

Thus, Plaintiff's own conduct renders hollow any concerns that a stay of discovery may slow the case down or impact her ability to uncover relevant evidence.

Nor will any further delay prejudice Plaintiff. The HerdDogg Defendants have implemented litigation holds to preserve all existing emails, electronic devices, and files that may be relevant to Plaintiff's claims. The HerdDogg Defendants have also collected and preserved approximately 325,000 files from electronic devices and domains formerly used by Plaintiff alone. If discovery proceeds, there will be significantly more ESI to collect and review, but for now it is preserved.

Plaintiff will also not suffer prejudice from the effects of the passage of time on the memory of any future deponent. Indeed, the additional few months it may take to resolve the Motion to Dismiss are not likely to have much effect on memories—particularly in comparison to the four-plus years that have already transpired between the Alleged Forgeries and the Complaint.

Moreover, resolving the Motion to Dismiss before discovery is likely to serve Plaintiff's interests, not harm them. If granted in any part, the Motion to Dismiss would simplify the discovery process and allow the parties to focus discovery on only those defendants and claims that remain in the litigation—if any do at all.

For these reasons, the first factor weighs in favor of staying discovery.

### III.   Factor Two: The Burden On The HerdDogg Defendants Is High

In comparison, discovery at this stage will significantly and unnecessarily burden the HerdDogg Defendants. One reason for this is that the Complaint is an impermissible group pleading that fails to sort out the individual actors alleged to be liable for each cause

7

of action or allegedly wrongful act. *Jacobs v. Credit Suisse First Boston*, 2011 WL 4537007, at *7 (D. Colo. Sept. 30, 2011). And the Complaint is also a shotgun-style pleading that impermissibly contains a long narrative followed by numerous claims that recite the formulaic elements and refer to the preceding narrative as support. *Id.* at *6. Indeed, the Complaint attributes all the alleged wrongs and conspiratorial acts to all "Defendants" generally and then recites the elements of all the claims against all Defendants. (*E.g.*, *id*. ¶¶ 68, 70, 71, 72, 89–91 & each Count.)

The problem with these broad pleading techniques is that they do not give the defendants notice about what it is they allegedly did wrong. That, in turn, requires the defendants to make broad discovery requests to prepare and defend against *any* allegation attributed to "Defendants" generally regardless of whether those allegations are attributable to each individually. Further, there are no actionable allegations of wrongdoing against several of the HerdDogg Defendants. Rather, the claims against them proceed solely on the basis of the allegations levied against "Defendants" as a group.

And if discovery proceeds now, there is no doubt that it will be expensive and burdensome for the HerdDogg Defendants, including those whose names are barely mentioned in the Complaint. It will entail the review of hundreds of thousands of pieces of ESI in HerdDogg's possession, depositions, and extensive third-party discovery on the non-party investors who were allegedly duped via the Alleged Investment Fraud. Much of that discovery—including discovery regarding the Alleged Investment Fraud—will be rendered unnecessary if the Court grants the Motion to Dismiss, even in part.

The Motion to Dismiss presents colorable arguments for dismissal. For example,

the Motion to Dismiss establishes that the RICO claims should be dismissed with prejudice because they are barred by the statutory securities-fraud exception and Plaintiff lacks RICO standing and ordinary standing to assert them. And the COCCA claims should be dismissed with prejudice on standing grounds and because COCCA does apply extraterritorially to the alleged wrongs committed outside of Colorado such as the Alleged Investment Fraud on the State of North Dakota.   It will place a tremendous burden on the HerdDogg Defendants to engage in discovery on those defective claims when a ruling in their favor on the Motion to Dismiss would render all that discovery unnecessary.

Discovery regarding the Alleged Investment Fraud illustrates this. If discovery proceeds now, the parties will focus significant efforts to uncover the facts around the Alleged Investment Fraud, including what was said to the investors, by whom, when, and whether the investors relied on it. But that discovery will prove a waste if the Motion to Dismiss is granted as to the RICO claims (*e.g.*, because of the securities-fraud bar and standing) and the COCCA claims (*e.g.*, of standing and the lack of extraterritorial application).

Yet once money is spent doing the discovery, it is gone for good, even when the claims are dismissed. For this reason, discovery may be inappropriate where the resolution of a dispositive motion may be determinative of the case or significantly narrow the scope of claims and parties. *Shannan v. GEICO Gen. Ins. Co.*, 2022 WL 19567991, at *1 (D. Colo. Feb. 15, 2022) (collecting cases)

Here, the future of each claim is shrouded in doubt. It would be extremely burdensome for the HerdDogg Defendants to nonetheless expend significant resources to defend against claims that may not exist following resolution of the Motion to Dismiss.

9

Accordingly, the second factor weighs in favor of staying discovery until the Motion to Dismiss is resolved.

### IV. Factor Three: Staying Discovery Is More Convenient For The Court

It would save judicial resources to resolve the Motion to Dismiss before discovery proceeds, particularly where there is a challenge to jurisdiction. *Mariani*, 2013 WL 6688966, at *2. At this point, we do not know who the defendants will be. The Other Defendants have not been served (although Plaintiff filed this case in July). And some (or all) of the HerdDogg Defendants are likely to be dismissed. The Court has not entered a scheduling order, so there are no deadlines to reschedule. Any discovery steps taken now by the Court will likely need to be redone, or will be unnecessary or redundant, based on whether the Other Defendants are served and the outcome of the Motion to Dismiss. Thus, a stay is more convenient for the Court.

Conversely, judicial resources would be wasted if discovery were to proceed in the absence of personal jurisdiction over those HerdDogg Defendants who have moved to dismiss on that basis. *See Wyers Prods. Grp.*, 2013 WL 2466917, at *3. As discussed in Argument Section II of the Motion to Dismiss, if the RICO claims are dismissed, which they should be, the Court will lack personal jurisdiction over six of the HerdDogg Defendants. It would be a waste of judicial (and party) resources to subject multiple defendants to discovery when they are not subject to personal jurisdiction.

In sum, it would conserve judicial resources for the Court to first determine whether some or all the claims and defendants survive the Motion to Dismiss before setting a complex discovery schedule for this multi-party case. If the Motion to Dismiss is granted, this matter will either go away or will revert to a much more straightforward dispute,

10

making it far easier for the Court to manage discovery with a more streamlined case schedule and discovery limits.

Thus, the third factor favors a stay.

## V.     Factor Four: The Interests Of Nonparties Would Be Served By A Stay

Here, there are nonparties with significant or particularized interests in this case whose interests would be served by a stay. *See Titeflex Corp.*, 2013 WL 6688966, at *2. Those nonparties are the HerdDogg investors who were allegedly defrauded by the Alleged Investment Fraud. If discovery proceeds now, substantial third-party discovery will likely be directed toward them. That discovery would be obviated if the Court dismisses the RICO claims (because of the securities-fraud bar and standing) and the COCCA claims (because of standing and no extraterritorial application). Thus, staying discovery at this juncture potentially avoids burdening several third parties with unnecessary discovery. As a result, this factor favors a stay.

## VI.    Factor Five: The Interests Of The Public Favor A Stay

The public has a general interest in efficient and just resolution of litigation. That interest would be best served by a discovery stay. As in *Titeflex Corp.* and as argued above, avoiding wasteful efforts by the Court clearly serves this general interest. *Id*. Thus, the fifth *String Cheese* factor weighs in favor of staying discovery.

### *Conclusion*

WHEREFORE, the HerdDogg Defendants respectfully request that the Court grant this Motion to Stay and enter an order staying all discovery until the Court rules on the HerdDogg Defendants' Motion to Dismiss, and for such other relief as the Court deems just and proper.

Dated this 14th day of November, 2025.

                Respectfully submitted,

                /s/ *Andrew P. Shelby*
                One of Their Attorneys

Andrew P. Shelby
Carolyn E. Isaac
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
Phone:   312.596.5884
Fax:     312.222.0818
andrew.shelby@michaelbest.com
ceisaac@michaelbest.com

Nathan C. Dillon
Michael Best & Friedrich LLP
675 15th Street, Suite 2000
Denver, CO 80202
Phone:   303.536.1187
Fax:     877.398.5240
ncdillon@michaelbest.com

*Attorneys for Defendants HerdDogg, Inc., Lou Faust, Andrew Uden, Shane Schulz, Rob Schultz, Edward Hamburg, Jason Wrone, Jon Moyes, Jeffrey Mitchel, Scott Shambo, and Beth Hammar*

## CERTIFICATE OF SERVICE

   I hereby certify that on November 14, 2025, a true and correct copy of the foregoing **HerdDogg Defendants' Motion to Stay Discovery** has been electronically filed with the Clerk of Court utilizing the CM/ECF system, which results in service on the following:

John Oleske
LAW OFFICE OF JOHN OLESKE
243 Main Street, Suite 50
New Paltz, NY 12561
Email: john@johnoleskelaw.com

*Attorney for Plaintiff*

              /s/ *Andrew P. Shelby*
              Andrew P. Shelby