UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-02254-GPG

MELISSA BRANDAO,

                Plaintiff,

v.

HERDDOGG, INC.,
O'LEARY VENTURES MANAGEMENT, LLC,
WONDER FUND NORTH DAKOTA, LLLP,
LOU FAUST,
KEVIN O'LEARY,
PAUL PALANDJIAN,
ANDREW UDEN,
SHANE SCHULZ,
ROB SCHULTZ,
DEAN DIDATO,
EDWARD HAMBURG,
JASON WRONE,
JON MOYES,
JEFFREY MITCHEL,
SCOTT SHAMBO,
BETH HAMMAR,
and DOES 1-10,

                Defendants.

---

**HERDDOGG DEFENDANTS' MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 11**

---

Defendants HerdDogg, Inc. ("HerdDogg"), Lou Faust, Andrew Uden, Shane Schulz, Rob Schultz, Edward Hamburg, Jason Wrone, Jon Moyes, Jeffrey Mitchel, Scott Shambo, and Beth Hammar (collectively, the "HerdDogg Defendants") hereby move for sanctions against the Plaintiff Melissa Brandao and her counsel pursuant to Fed. R. Civ. P. 11(b)(1) through (3), and in support thereof state as follows:

### D.C.Colo.LCivR 7.1 – CONFERRAL STATEMENT

HerdDogg Defendants conferred with Plaintiff's counsel on November 6, 2025 and state that Plaintiff opposes the relief requested.

### Fed. R. Civ. P. 11 – SAFE-HARBOR STATEMENT

Defendants served this Motion pursuant to Fed. R. Civ. P. 5(b) & 11(c)(2) at least twenty-one days before filing it with the Court.

### SUMMARY OF ARGUMENT

Plaintiff's Complaint alleges that the HerdDogg Defendants stole two patents by forging her signature on two assignments. These claims are frivolous. Evidence establishes that Plaintiff knew of—and approved of—the patent assignments she now claims were fraudulently procured by the HerdDogg Defendants. The evidence also demonstrates that, several years before the events alleged in the Complaint, Plaintiff agreed to assign to HerdDogg all her future developments. Later, Plaintiff communicated with HerdDogg agents about the patent assignments on numerous occasions before she executed them. Moreover, even if Plaintiff's facts are assumed true, her claims are nonetheless legally frivolous because they are time barred and the RICO claims are barred by the statutory securities-fraud exception.

Thus, it is apparent that Plaintiff asserted the Complaint for improper purposes, including to harass the HerdDogg Defendants and needlessly foist significant litigation costs on them. Plaintiff's counsel, John Oleske, also failed to make any reasonable inquiry into the facts and evidence prior to asserting Plaintiff's claims or take corrective action upon being notified of the facts, thereby erroneously representing to the Court that the claims made against the HerdDogg Defendants are warranted. Accordingly, Plaintiff and

2

her counsel have violated Rule 11(b), and the imposition of sanctions is justified.

## BACKGROUND

On July 22, 2025, Plaintiff filed a fifty-four-page Complaint alleging fifteen Counts. (Dkt. 1.) The Complaint involves a so-called "fraud scheme" in which the HerdDogg Defendants supposedly accessed Plaintiff's email account and forged her electronic signature on two occasions in May and December 2021. (*Id*. ¶¶ 59–105.) Through this "scheme," the HerdDogg Defendants allegedly assigned themselves two patents—U.S. Design Patent No. D1020130 (the "'130 Patent") and U.S. Utility Patent No. 11191626 (the "'626 Patent")—without Plaintiff's knowledge or consent and later procured investments based in part on the Patent assignments. (*Id*.) However, the Complaint fails to raise important and dispositive facts.

### *The Invention Assignment Agreement*

On January 2, 2019, Plaintiff and HerdDogg entered into an Employee Confidentiality and Invention Assignment Agreement (the "CIAA"). (Ex. 1.) In the CIAA, Plaintiff preemptively assigned certain future patented inventions to HerdDogg, including "Developments" as therein defined. (Ex. 1 § 2.) Indeed, Plaintiff "agree[d] to assign, and . . . hereby irrevocably assign[ed] to Company, [her] entire right, title, and interest in any Developments." (*Id*. § 3.) Plaintiff further agreed to execute documents to effectuate any assignments, or, if she was not available to do so for any reason, that HerdDogg was authorized to execute assignments on her behalf. (*Id*. § 4.)

### *The Assignment and Related Documents for the '130 Patent*

On May 14, 2021, HerdDogg's outside counsel, Randy McCarthy of Hall Estill, emailed Plaintiff regarding the application for what would later become the '130 Patent,

3

attached the patent application, and wrote: "[p]lease see attached a draft design patent application for the ANIMAL TAG design patent we wish to file on behalf of HerdDogg . . . . *We will assign this to HerdDogg*." (Ex. 2 (emphasis added).) After several email exchanges, on May 21, 2025, Mr. McCarthy notified Plaintiff that he would be filing the patent application by the end of the month. (Ex. 3 at 4.)

On May 24 at 1:03 p.m., Mr. McCarthy copied Plaintiff on an email regarding the drafting and preparation of the assignment documents. (*Id*. at 1.) The email referred to Plaintiff as the inventor and HerdDogg as the assignee. (*Id.*) Just an hour later, at 2:15, Connie Bursey at Hall Estill sent Plaintiff an email attaching the assignment documents. (Ex. 4.) The email stated, "Attached are 2 sets of documents for you to sign and date (Assignment and Declaration) . . . . Once I receive all signed documents, I will be able to proceed with the filing of the design applications." (*Id*.) The draft assignment for the '130 Patent was attached to that email. (*Id*.) On May 25, at 2:01, Mr. McCarthy then emailed Plaintiff asking if she had completed the paperwork. (Ex. 5.) Ms. Bursey re-sent Plaintiff the documents the next morning on May 26 (Ex. 6), and Plaintiff promptly forwarded them to her assistant Ms. Hammar (Ex. 7).

Ms. Hammar sent them to Plaintiff via DocuSign (Ex. 8), and Plaintiff signed minutes later at 11:22 a.m. (Ex. 9). The DocuSign receipt shows that the documents were sent and signed via different IP addresses. (Ex. 10.) The DocuSign system automatically sent the signed documents back to Ms. Bursey at 11:23 a.m., and she responded at 11:29 by forwarding the DocuSign receipt to Plaintiff by writing, "Thank you for sending over the signed documents. I will get these two design applications filed." (Ex. 11.)

Plaintiff had access to, and was using her email account, on May 26. At 4:21 p.m.

4

that day, she confirmed a meeting with Craig Russo at the University of Wyoming. (Ex. 12.) One minute later, at 4:22 p.m., Ms. Bursey sent Plaintiff signed copies of multiple documents regarding the '130 Patent, including the Assignment, the Assignment Cover Sheet, and materials confirming the related filings with the USPTO. (Ex. 31 at 1) The body of Ms. Bursey's email stated that these things were attached. (*Id*.) That email was the second notice from Ms. Bursey regarding the signed assignment. Thus, if someone at HerdDogg had forged Plaintiff's signature, this was her second notice of that.

The next afternoon at 3:09 p.m., Mr. McCarthy sent Plaintiff an email notifying her that the Assignment of the '130 Patent had been recorded with the USPTO. (Ex. 13.) The email stated in no uncertain terms: "Attached for your files for the above-referenced application is the Notice of Recordation of Assignment Document and Cover Sheet we recently received from the USPTO. *Also attached is the signed assignment that was filed*." (*Id*. (emphasis added).) This was Plaintiff's third notice of the supposed forgery. After that, Plaintiff routinely worked on HerdDogg presentations that referred to the '130 Patent as HerdDogg's property, not hers. (*E.g.*, Ex. 14, attachment at p. 24.)

Notwithstanding her active communication with the HerdDogg Defendants and their agents regarding the '130 Patent assignment, Plaintiff now claims that she did not assign the '130 Patent to HerdDogg, and that unbeknownst to her, "Defendant Faust directed Defendant Moyes, Hammar, and/or other co-conspirators to unlawfully gain unauthorized access to [her] email account, and thereby her DocuSign electronic signature account, and to use that unauthorized access to forge [her] electronic signature on a patent assignment document" on May 26, 2021 and that she only discovered the assignment occurred in December 2023. (Dkt. 1 ¶¶ 59–60, 82, 104.)

5

***The Assignment and Related Documents for the '626 Patent***

HerdDogg filed the application for the '626 Patent on January 29, 2021. (Ex. 15 at 5.) It identifies HerdDogg as the applicant and lists the applicant type as "Assignee." (*Id*. at 4.) Priscilla Anderson at Hall Estill sent Plaintiff a copy of the filed patent application that same day. (Ex. 16.) Ms. Anderson also sent Plaintiff a copy of the filed Patent Cooperation Treaty ("PCT") application for provisional application No. 62/706,433 that resulted in the '626 Patent. (Ex. 17; Ex. 18 (identifying provisional application number).) The PCT likewise identifies HerdDogg as the applicant for the provisional application. (Ex. 17.)

On December 7, 2021, Mr. Faust sent an email to Plaintiff and many others announcing that the '626 Patent had been published that morning. (Ex. 19.) A few days later, on December 13, Jessica Burns at Hall Estill emailed Plaintiff drafts of an Assignment and Power of Attorney to assign the Patent to HerdDogg. (Ex. 20.) At 11:34 a.m., Plaintiff forwarded these documents to Ms. Hammar. (Ex. 21.) Plaintiff wrote "Beth, Can you load these into DocuSign? So I can sign remotely and include Jessica so she gets a copy." (*Id*.) Later that afternoon, Ms. Hammar and Plaintiff exchanged Slack messages regarding Ms. Hammar's access to the DocuSign account. Ms. Hammar did not know the password and needed Plaintiff's help to reset it to gain access. Plaintiff readily helped in this process. Here is their instant message exchange (Ex. 29):

| Time | Sender | Message |
| --- | --- | --- |
| 14:43:41 | Ms. Hammar | I need to send a verification email to you for DocuSign |
| 14:45:35 | Ms. Hammar | I requested the verification email for DocuSign... you should have the code |

6

| 14:50:54 | Ms. Brandao | *713814* |
| 14:51:03 | Ms. Hammar | thank you |
| 14:51:10 | Ms. Brandao | you're welcome |
| 14:56:13 | Ms. Hammar | it's been sent |

Either Plaintiff or Ms. Hammar discovered an error in Plaintiff's title in the assignment by referring to her as HerdDogg's "President and CFO." (Ex. 23.) Ms. Hammar then called Ms. Burns on the afternoon of December 13. The next morning, December 14 at 10:37 a.m., Ms. Burns sent the draft to Plaintiff again and asked for her signature. (Ex. 22.) Plaintiff herself proactively reached out to Ms. Hammar to make sure that she signed the draft, but she learned that her title was still wrong (Ex. 29):

| **Time** | **Sender** | **Message** |
|---|---|---|
| 10:50:28 | Ms. Brandao | Beth can you send me the docusign for the IP attorney? |
| 10:52:06 | Ms. Hammar | Jessica hasn't sent the corrected paperwork... the current POA has your title as President a[n]d CEO... do you want to sign then as is? |
| 11:09:21 | Ms. Brandao | no |
| 11:09:42 | Ms. Brandao | can you please call her and get her to send the correct paperwork? she must not have seen your email she pinged me again this am. |
| 11:10:07 | Ms. Hammar | I called and left another message for Jessica to [c]all me back... explained the error and what it needed to be corrected to |

Almost immediately after this exchange, Plaintiff herself also emailed Ms. Burns directly, writing "Jessica, the title on the documents is wrong. I am the Founder and CRO of

7

HerdDogg. Can you please make those changes and resend?" (Ex. 23.)

As she said she would do, Ms. Hammar called Ms. Burns. She also emailed Ms. Burns at 12:12 p.m. to explain the error. (Ex. 24.) Ms. Burns apologized. (Ex. 25.) Ms. Hammar thanked her for fixing the document and indicated she would send it to Plaintiff for signature. (*Id*.) Ms. Hammar sent the assignment to Plaintiff via DocuSign at 1:13 p.m. (Ex. 26.) Ms. Hammar then sent Plaintiff a Slack message at 1:14 stating "@melissa I just sent the documents for the patent over . . . they will be in your DocuSign inbox for signature." (Ex. 29.) Plaintiff signed the Assignment, and the DocuSign receipt shows that the documents were sent and signed via different IP addresses. (Ex. 27.) On December 17 at 8:14 a.m., Ms. Burns followed up with Ms. Hammar about the assignment. (Ex. 28.) Ms. Hammar sent a Slack message to Plaintiff at 8:46 a.m. She wrote "Jessica from Hall Estill just pinged me about the patent documents." (Ex. 29.) Plaintiff replied at 8:47 a.m., stating: "I signed them already two days ago." (*Id.*)

Finally, on October 30, 2025, the HerdDogg Defendants submitted a Notice of Violation of FRCP 11 and Notice to Cure letter to Plaintiff and her counsel, John Oleske. (Ex. 30.) The Notice outlined the arguments in this Motion, enclosed a copy of it, and demanded that the Rule 11 violations be cured. However, as of this filing, Plaintiff and her counsel have not cured their Rule 11 violations.

## ARGUMENT

### I.   Legal standard

The Rule 11 analysis has two steps. First, the Court must determine whether a pleading violates Rule 11. *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019). Rule 11 imposes an affirmative duty to conduct a reasonable inquiry into the facts and law

before filing, and the applicable standard is one of objective reasonableness under the circumstances. *Geiger v. Chubb Grp.*, No. 23-CV-01080-PAB-KAS, 2025 WL 813662, at *4 (D. Colo. Mar. 14, 2025). All factual contentions in a party's pleadings must have evidentiary support or must "likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id*. (quoting Fed. R. Civ. P. 11(b)(3)). Second, if the court determines that Rule 11(b) has been violated, it may impose an appropriate sanction on any attorney or party that violated or is responsible for violating the rule. *Id*.

II. **All Claims Based on The Patent Theory Are Frivolous Because They Lack Evidentiary Support**

A party violates Rule 11(b)(3) when she has no evidentiary support for the allegations and fails to show that investigation or discovery would lead to any supporting evidence. *Laurino v. Tate*, 220 F.3d 1213, 1218 (10th Cir. 2000). Here, all the Complaint's claims are premised on the allegations that: the HerdDogg Defendants "stole" the Patents by executing the assignments without Plaintiff's consent (Dkt. 1 ¶¶ 59, 68); several of the HerdDogg Defendants accessed Plaintiff's email and used DocuSign to forge her signature (*id.* ¶¶ 60, 68); Plaintiff did not know that the HerdDogg Defendants transmitted the documents to the USPTO (*id*. ¶ 82); and she did not learn of the assignments until December 2023 (*id*. ¶¶ 104–105). These allegations violate Rule 11(b)(3).

As an initial matter, Plaintiff executed the CIAA in 2019, which granted HerdDogg all future Developments invented by Plaintiff and provided HerdDogg with authority to assign the Patents to itself. (Ex. 1 §§ 2–4.) It is beyond dispute that the Patents fall within the definition of "Developments" because Plaintiff (jointly with others) created, conceived, completed, and/or reduced them to practice while she was employed by HerdDogg, thereby satisfying all three of subparts (i) through (iii). (*Id*. § 2.) Consequently, even if a

9

HerdDogg Defendant had signed the Patent assignments on behalf of Plaintiff—which definitively did not occur—Plaintiff expressly authorized that. Thus, on its own, the CIAA renders materially false all allegations in the Complaint regarding patent forgery or theft.

Further, the evidence establishes that Plaintiff was notified about HerdDogg's intent to assign the Patents (Exs. 2–3, 16–17, 20), received the draft assignments (Exs. 4, 7, 20), executed the assignments (Ex. 8–11, 26–27), received the signature copies several times (Exs. 4–6), received confirmation the materials were filed with the USPTO (Ex. 13, 19), communicated extensively about the assignments (Ex. 21–26), presented the '130 Patent as belonging to HerdDogg (Ex. 14), and confirmed in writing that she signed the '626 Patent (Ex. 29)—all before December 2023, the date the Complaint alleges she first discovered the assignments. A cursory investigation into the facts would have revealed that Plaintiff's claims lack evidentiary support and would always lack evidentiary support after further investigation or discovery.

Contrary to the Complaint's allegations, Plaintiff was unquestionably aware of the foregoing points—because they are all based on communications sent to or from her. Despite that, Plaintiff's counsel lobbed factual allegations absent any evidentiary basis for the alleged fraudulent transfers of the Patents. Those allegations would have been proven false by a cursory investigation into the underlying evidence. That is sanctionable. *Geiger*, 2025 WL 813662, at *7 (awarding sanctions against plaintiff's counsel). "Rule 11 imposes on lawyers a gatekeeper role, ensuring that potentially defamatory allegations are not made in public filings without an officer of the court having certified that a reasonable inquiry has been made as to their truth." *O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d 1168, 1205 (D. Colo. 2021).

Here, the facts demonstrate that Plaintiff's counsel did not make the necessary inquiries or take independent steps to verify the accuracy of the information provided to him by Plaintiff. Indeed, upon learning of the facts (*see* Ex. 30), Plaintiff's counsel failed to take steps to cure the Rule 11 violation. Accordingly, because the Court "may impose sanctions against [a] plaintiff, plaintiff's counsel, or against both with joint and several liability," the HerdDogg Defendants respectfully request that sanctions be awarded for clear violations to Rule 11(b). *Geiger*, 2025 WL 813662, at *7.

### III. Counts I Through VII and IX Through XIV Are Frivolous Because They Are Time Barred

As explained above, the allegations that the HerdDogg Defendants "forged" Plaintiff's signatures on documents relating to the Patent assignments or otherwise "stole" the Patents are false. Even assuming arguendo that those allegations are true, Counts I through VII and IX through XIV are time barred because Plaintiff has been on notice of any supposed forgery and alleged injuries since no later than May 2021.

*First*, HerdDogg filed the application for the '626 Patent on January 29, 2021. (Ex. 15.) The application identifies HerdDogg as the applicant on the Application Data Sheet and lists the Applicant type as "Assignee." (*Id.*) Plaintiff received a copy of the patent application the same day it was filed, along with a copy of the PCT, which likewise listed HerdDogg as the applicant for the same invention. (Ex. 16.) Thus, she had actual knowledge in January 2021 of HerdDogg's intent to be assigned the '626 Patent (Exs. 15-17), and constructive knowledge based on the patent filing itself (Ex. 19).

*Second*, in May 2021, Ms. Bursey at Hall Estill notified Plaintiff that HerdDogg would be applying for the '130 Patent and seeking an assignment of it. (Ex. 4–5.) After Plaintiff executed the assignment, Ms. Bursey sent Plaintiff *three copies* of it—two on May

26 and one on May 27. (Ex. 11, 13, 31.) When delivering the copy on May 27, Ms. Bursey also notified Plaintiff that the assignment had been filed with the USPTO. (Ex. 13.) Ms. Bursey provided Plaintiff with copies of the filing materials and the assignment. (*Id.*.) Thus, had there been a forgery, Plaintiff actually knew of it no later than May 2021.

*Third*, even if Plaintiff somehow did not receive any of the emails about the '130 Patent (she did), that would not matter. HerdDogg (via Hall Estill) filed the Notice of Recordation of Assignment Document regarding the '130 Patent with the USPTO on May 27, 2021. That document is publicly available, and Plaintiff is charged with constructive knowledge of it regardless of her actual knowledge (which, of course, she had). *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 157 (S.D. Cal. 1954) ("[R]ecordation of the assignment to plaintiff imparted 'notice to the world of its existence.'"); *see also Wine R. Appliance Co. v. Enter. R. Equip. Co.*, 297 U.S. 387, 393 (1936).

Accordingly, Plaintiff had actual and constructive knowledge that HerdDogg intended to be the assignee of the '626 Patent. And, assuming that the '130 Patent assignment was "forged," Plaintiff had actual knowledge and constructive knowledge of the allegedly forged assignment and any resulting injury no later than May 27, 2021. At minimum, the repeated emails and filings mean that Plaintiff should have known of her alleged injuries no later than May 2021. Her knowledge as of May 2021 triggered the statute of limitations on all claims that are based on the "forgery" theory as to the Patents, including the claims alleged in Counts I through VII and IX through XIV.

The statutes of limitations for those Counts are as follows: (a) Counts I–III (RICO)—four years, *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987); (b) Counts IV–VII (CFAA)—two years, 18 U.S.C. § 1030(g); (c) Counts IX–XI

(COCCA)—two years, Colo. Rev. Stat. Ann. § 13-80-102(1)(i); (d) Counts XII and XIII (theft, conversion)—two years, *id.* § 13-80-102(1)(a); and (e) Count XIV (fraud)—three years, *id.* at § 13-80-101(1)(c). Plaintiff filed her Complaint in August 2025. That filing is outside of the limitations period for each of these Counts. Indeed, as to Counts IV through VII and IX through XIV, the statute of limitations expired in 2023, making the claims entirely stale and completely frivolous on both factual and legal grounds. A reasonable inquiry into the underlying facts to determine the accrual date of Plaintiff's claims—even under the facts as pleaded—would reveal frivolity in pleading Counts I through VII and IX through XIV. Because Plaintiff's counsel nonetheless certified the allegations, he should be jointly and severally liable for sanctions pursuant to Rule 11(b). *Scott v. Boeing Co.*, 204 F.R.D. 698, 701 (D. Kan. 2002) (finding claims frivolous where counsel argued to extend existing statutes of limitations and awarding sanctions).

**IV.    Counts I Through III (RICO) Are Frivolous
Because They Are Barred By The Securities-Fraud Exception**

The Private Securities Litigation Reform Act amended RICO to expressly exclude securities fraud as a racketeering act. Section 1964 now states "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 US.C. § 1964(c). The Tenth Circuit applies this securities-fraud exception broadly by prohibiting RICO plaintiffs from relying not only on conduct actionable as securities fraud, but also on any conduct "undertaken in connection with the purchase of a security." *Bixler v. Foster*, 596 F.3d 751, 759-60 (10th Cir. 2010). Thus, in applying the securities-fraud bar, "[i]t is enough that the scheme to defraud and the sale of securities coincide." *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1268 (D. Colo. 2022) (quoting *S.E.C. v. Zandford*, 535 U.S. 813, 822 (2022)).

13

The RICO claims alleged in the Complaint are explicitly premised on securities fraud. (Dkt. 1 ¶¶ 125–139, 149–172.) They allege a scheme to defraud public and private investors by misrepresenting HerdDogg's ownership of the Patents and HerdDogg's financial health and revenue. The Complaint expressly refers to the alleged RICO scheme as involving "investment fraud." (Dkt. 1 ¶ 130.) It also repeatedly alleges that the point of the alleged RICO scheme was to induce investments in HerdDogg. (*E.g.*, Dkt. 1 ¶ 127 (allegedly fraudulent offering materials sent to investors including "communications seeking additional funding under materially false pretenses"), ¶ 128 (allegedly false representations "intended to induce investment by fraudulently claiming HerdDogg would establish a meaningful operational presence in the state"); ¶ 129 (allegedly forged patent assignments "to fraudulently represent to investors that the company held undisputed rights to all intellectual property foundational to its product line").) These are quintessential securities fraud allegations. Thus, they cannot be predicate acts for a RICO claim.

Moreover, the Complaint recognizes its reliance on a securities-fraud theory. Indeed, it explicitly pleads securities fraud as COCCA predicate acts. (Dkt. 1 ¶¶ 191, 203.)

As a result, when the allegations regarding securities fraud are excised, only two candidate predicate acts remain—the purported forgeries. But these predicate acts are barred too given that Plaintiff alleges that the assignments were forged as part of the securities fraud scheme. (Dkt. 1 ¶ 129.) Regardless, as discussed above, Plaintiff is time-barred from relying on the "forgeries" as predicate acts. Even if she were not, two purportedly forged assignments in 2021 are isolated and completed acts that do not satisfy the continuity requirement for a RICO claim. *Alter v. DBLKM, Inc.*, 840 F. Supp. 799, 809-10 (D. Colo. 1993) (predicate acts extending over six to seven months are

14

insufficient to establish continuity without clear threat of future criminal conduct).

Neither the securities-fraud exception nor the Tenth Circuit's broad application of it is new. The Complaint's explicit reliance on securities fraud and related activity as the predicate acts for the RICO claims are therefore frivolous.

\* \* \*

The purpose of Rule 11 sanctions is "to deter repetition of the conduct or comparable conduct by others similarly situated." *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018). Plaintiff and her counsel have clearly violated Rule 11 because they have brought frivolous claims unsupported by any evidence and have stood by their erroneous assertions. Sanctions under these circumstances are manifestly appropriate.

## CONCLUSION

WHEREFORE, the HerdDogg Defendants respectfully request that the Court:

1. Grant this Motion for Sanctions pursuant to Fed. R. Civ. P. 11;

2. Award the HerdDogg Defendants' attorneys' fees and costs incurred, and to be incurred, in this matter as against Plaintiff;

3. Award joint and several liability as to any sanctions against Plaintiff's counsel, John Oleske; and

4. Grant such other relief as is necessary and proper.

Dated this 21st day of November, 2025.

Respectfully submitted,

/s/ Andrew P. Shelby
Andrew P. Shelby
Carolyn E. Isaac
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
Phone:  312.596.5884
Fax:    312.222.0818

andrew.shelby@michaelbest.com
ceisaac@michaelbest.com
Nathan C. Dillon
Michael Best & Friedrich LLP
675 15th Street, Suite 2000
Denver, CO 80202
Phone:   303.536.1187
Fax:     877.398.5240
ncdillon@michaelbest.com

*Attorneys for Defendants HerdDogg, Inc., Lou Faust, Andrew Uden, Shane Schulz, Rob Schultz, Edward Hamburg, Jason Wrone, Jon Moyes, Jeffrey Mitchel, Scott Shambo, and Beth Hammar*

16

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, a true and correct copy of the foregoing **HerdDogg Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11** has been electronically filed with the Clerk of Court utilizing the CM/ECF system, which results in service on the following:

John Oleske
LAW OFFICE OF JOHN OLESKE
243 Main Street, Suite 50
New Paltz, NY 12561
Email:	john@johnoleskelaw.com
Phone:	(646) 709-7538
*Attorney for Plaintiff*

/s/ Andrew P. Shelby