IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-02254-GPG-NRN

MELISSA BRANDAO,

      Plaintiff,

v.

HERDDOGG, INC., et al.,

      Defendants.

---

## MOTION TO DISMISS

---

**Table of Contents**

INTRODUCTION ............................................................................................... 1

THE COMPLAINT .......................................................................................... 3

ARGUMENT .................................................................................................. 7

    I.   Colorado Has No Jurisdiction Over the O'Leary Defendants............................... 7

       a)  The Court lacks jurisdiction over the O'Leary Defendants. .............................. 8

       b)  RICO's nationwide service provision and conspiracy allegations cannot save Plaintiff's claims..................................................................................... 9

    II.  The Complaint Fails to State a Claim Upon Which Relief Can be Granted. ....... 10

       a)  The Complaint is deficient.................................................................. 11

       b)  The RICO and COCCA theories collapse on every element........................... 12

       c)  The PSLRA Forecloses Securities-Fraud-Based RICO Claims. .................... 22

    III.  The Complaint Relies on Impermissible Group Pleading ................................. 23

CONCLUSION ............................................................................................ 24

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................10, 11, 12, 18

*BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089 (10th Cir. 1999) ........................................................................................................................... 17, 18

*Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010) ............................................. 13, 19, 22, 23

*Blixseth v. Cushman & Wakefield of Colorado, Inc.*, 2013 WL 5446791 (D. Colo. Sept. 30, 2013) ................................................................................................................ 22

*Boulware v. Baldwin*, 2012 WL 1412698 (D. Utah Apr. 23, 2012).................................. 23

*Braverman v. LPL Fin. Corp.*, 2011 WL 13289787 (D.N.M. Apr. 21, 2011) ................... 23

*Brooks v. Bank of Boulder*, 891 F. Supp. 1469 (D. Colo. 1995)............................... 17, 18

*Burnett v. Amrein*, 2006 WL 2859625 (D. Colo. Oct. 3, 2006), *aff'd*, 243 Fed. Appx. 393 (10th Cir. 2007)......................................................................................... 14, 15, 18

*Carlson v. Town of Mountain Vill., Colorado*, 2019 WL 5819971 (D. Colo. Nov. 7, 2019) ................................................................................................................................. 20

*Carrado v. Daimler AG*, 2018 WL 4565562 (D. Colo. Sept. 24, 2018).......................... 24

*CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014) ................. 21

*Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006) ..................................... 10

*Cunningham v. Bank of Am., N.A.*, 2013 WL 2455945 (D. Colo. June 6, 2013) ............ 11

*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982 (10th Cir. 1992) .................. 16, 18

*Flip Mortgage Corp. v. McElhone*, 841 F.2d 531 (4th Cir. 1988)................................... 19

*Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088 (Colo. 1977) ...................... 13

*Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224 (D. Colo. 2014) .............. 17

*Hart v. Salois*, 605 F. App'x 694 (10th Cir. 2015) .......................................................... 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)...................... 9

*Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220 (D. Colo. 2010) ........................ 20

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011).................... 11, 12

*Kearney v. Dimanna*, 195 F. App'x 717 (10th Cir. 2006) ............................................... 15

*L5L Indus., Inc. v. Kiss Indus., LLC*, 2022 WL 704705 (D. Colo. Jan. 21, 2022) ........... 25

iii

*List Interactive, Ltd. v. Knights of Columbus*, 2017 WL 3217817 (D. Colo. July 28, 2017) ........................................................................................................................... 8

*Marlow v. Allianz Life Insurance* explains, 2009 WL 1328636 (D. Colo. May 12, 2009). 16

*Med. Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025) ......................................................... 21

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992) ........................................ 19

*Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2018 WL 3209116 (D. Colo. June 29, 2018) .......................................................................................................... 13

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) .................................................... 24

*S. Disposal, Inc. v. Tex. Waste*, 161 F.3d 1259 (10th Cir. 1998) ..................................... 11

*Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243 (D. Colo. 2022). .............................. 20

*Shrader v. Beann*, 503 F. App'x 650 (10th Cir. 2012) ........................................................ 1

*Snyder v. ACORD Corp.*, 2016 WL 192270 (D. Colo. Jan. 15, 2016), *aff'd*, 684 F. App'x 710 (10th Cir. 2017) ............................................................................................... 24

*Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6 (1971) .......................... 23

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ................................................... 14, 15, 17

*Teran v. GB Int'l, SPA*, 652 F. App'x 660 (10th Cir. 2016) .............................................. 22

*Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006) ......................................................... 8

*United States v. Turkette,* 452 U.S. 576 (1981) ............................................................... 16

Defendants Kevin O'Leary, Paul Palandjian, O'Leary Ventures Management, LLC ("O'Leary Ventures"), and Wonder Fund North Dakota LLLP ("Wonder Fund") (collectively, the "O'Leary Defendants") respectfully move this Court for an order dismissing all claims against them with prejudice under Federal Rule of Civil Procedure 12(b). If the claims against them are dismissed, the O'Leary Defendants are entitled to attorneys' fees under C.R.S. § 13-17-201. *See, e.g.*, *Shrader v. Beann*, 503 F. App'x 650, 654–55 (10th Cir. 2012).

### D.C.Colo.L.Civ.R. 7.1 – Conferral Statement

Undersigned counsel certify they conferred with counsel for Plaintiff (John Oleske) by telephone on November 25, 2025, after sending Mr. Oleske a letter on November 3rd requesting Plaintiff voluntarily withdraw the Complaint and detailing the same arguments put forth here. As noted in the proposed scheduling order, Plaintiff's counsel was unequivocal that Plaintiff will not withdraw or amend any portion of the Complaint. *See, e.g.*, Doc. # 28 at 6(h). This is unsurprising. As detailed below, Plaintiff's claims lack a factual basis and are legally deficient and thus cannot be cured with amended pleadings.

### <u>INTRODUCTION</u>

Stripped of its rhetoric, the Complaint describes a shareholder dispute between a disgruntled founder and her former company that occurred long before the O'Leary Defendants became involved.

Plaintiff Melissa Brandao allegedly founded HerdDogg, Inc. ("HerdDogg") in 2015 and was subsequently fired from the company in August 2022. Plaintiff alleges that in 2021, HerdDogg and other defendants (not the O'Leary Defendants) forged her signature on two patent assignments, improperly ousted her from the company, and then defrauded investors by misrepresenting that HerdDogg owned those patents.

Years after these events allegedly occurred, Wonder Fund invested in HerdDogg. The allegations against the O'Leary Defendants stem entirely from a single phone call whereby Plaintiff's _attorney_ supposedly told Mr. Palandjian – one of the O'Leary Defendants – about the alleged fraud that occurred before Wonder Fund's investment into HerdDogg. Because Mr. Palandjian apparently did not respond in a way that Plaintiff's attorney would have preferred (which included the innocuous act of not allowing Plaintiff to "communicate with Defendant O'Leary directly"), he – along with Mr. O'Leary, O'Leary Ventures, and Wonder Fund – are alleged to have joined a RICO and Colorado Organized Crime Control Act ("COCCA") conspiracy. Compl. ¶¶ 113-115 ("…no later than the moment Plaintiff's counsel directly informed Defendant Palandjian of the Company's fraudulent conduct—Defendants O'Leary, Palandjian, O'Leary Ventures, and Wonder Fund North Dakota became active members of the racketeering enterprise.").

Immediately after filing this Complaint in July, Plaintiff and her counsel made dozens of social media posts about suing Mr. O'Leary for a racketeering conspiracy. As a public figure, Mr. O'Leary's reputation is paramount to his business dealings. Yet, Plaintiff did not even request a summons on which to serve the O'Leary Defendants until October (after being directed by this Court) and did not effectuate service until November thereby preventing this motion to dismiss from being filed earlier.[1] Accordingly, the claims against the O'Leary Defendants should be dismissed with prejudice.

---

[1]    Undersigned counsel have not found any social media posts by Plaintiff or her counsel concerning the HerdDogg insider-defendants (despite the Complaint focusing on their alleged conduct), further implying that the O'Leary Defendants were included only to attract media attention.

## THE COMPLAINT

The Complaint offers no plausible path to liability against any of the O'Leary Defendants. Aside from conclusory statements – which are not entitled to the assumption of truth – the Complaint puts forth no facts supporting the extraordinary accusations that the O'Leary Defendants joined a long-running racketeering enterprise, committed computer-hacking violations, or defrauded the State of North Dakota.

### I.    Plaintiff's Allegations of Misconduct Long Precede Any Involvement of the O'Leary Defendants.[2]

Plaintiff founded HerdDogg in 2015—nearly a decade before the O'Leary Defendants had any connection to the company. *Id.* ¶ 1.

According to Plaintiff, by 2019—almost five years before the O'Leary Defendants appeared—certain officers or executives "agreed among themselves, explicitly or implicitly, through words and deeds, to conspire to drive Plaintiff out of both her management and ownership positions in HerdDogg…" *Id.* ¶ 46. The Complaint recounts workplace disputes between Plaintiff and HerdDogg executives, who she refers to as "incompetent freeloaders." *Id.* ¶ 51. There are no allegations that the O'Leary Defendants were involved with the company at this time.

Plaintiff goes on to allege that in 2021, certain HerdDogg executives "unlawfully gain[ed] unauthorized access to [her] email account" to forge her signature on a patent assignment. *Id.* at ¶¶ 59, 68. The O'Leary Defendants are not alleged to have been involved in the patent assignment, which occurred before their involvement in HerdDogg.

---

[2]    Factual allegations in the Complaint are assumed true solely for the purposes of this Motion.

Plaintiff further alleges she was removed from HerdDogg in 2022. *Id.* at ¶¶ 84, 85. She claims that, throughout 2023 and 2024, certain HerdDogg executives (not the O'Leary Defendants) made material misrepresentations to prospective investors, including by "falsely claim[ing] … that the Company had a signed termination agreement with Plaintiff in which she released the Company from all potential claims, and that the Company possessed good title to the Stolen Inventions." *Id.* ¶ 88.

Plaintiff makes vague allegations about HerdDogg's spending following her ouster that merely *suggest* the *possibility* of some impropriety: "The financials *suggest* a company artificially inflating its book value through unsold inventory, with no viable path to revenue—and *possibly* misusing investor or public funds to sustain a non-viable business model." *Id.* ¶ 95 (emphasis added). *See also id.* ¶¶ 96, 98, 101 (alleging HerdDogg's financial information "suggests" undisclosed self-dealing.)

## II.    Almost Six Years After the Alleged Misconduct Begins, the O'Leary Defendants Appear as Outside Investors.

According to the Complaint, the O'Leary Defendants, through Wonder Fund, invested in HerdDogg in "2023 and continuing into 2024." *Id.* ¶ 4. Plaintiff acknowledges that there are no facts suggesting the O'Leary Defendants were involved in any alleged misrepresentation or patent theft: "Plaintiff cannot determine whether Wonder Fund was originally a *victim* of this fraud…or whether it began its involvement as a *co-conspirator*, and did not care that the company remains exposed to liability and does not possess good title to the Stolen Inventions." *Id.* ¶ 102 (emphasis in original). Plaintiff then guesses as to why Wonder Fund could be motivated to engage in fraud: "WonderFund's *potential* willingness to have engaged in fraud with its HerdDogg investment *may* have been due

to its intention to fraudulently earn management fees from the State of North Dakota…"
*Id.* ¶ 103 (emphasis added).

Despite acknowledging that the O'Leary Defendants may well be victims of the
alleged fraud, the Complaint abruptly pivots and puts forth conclusory allegations that the
O'Leary Defendants "coordinated" with HerdDogg insiders on an alleged fraud inflicted
*not on the Plaintiff*, but rather on "the State of North Dakota and related entities in
connection with efforts to secure funding through the Wonder Fund." *Id.* ¶ 109. There are
no facts explaining what this "coordination" consisted of, or how Plaintiff has standing to
pursue claims on behalf of others.

In support of the allegations, the Complaint states "[u]pon information and belief"
Mr. O'Leary and Mr. Palandjian "either knew, or deliberately disregarded, the falsity of
HerdDogg's representations concerning Plaintiff's intellectual property and her alleged
release" to North Dakota and others or "were reckless in failing to conduct basic diligence
prior to directing their affiliated entities to invest public money into HerdDogg." *Id.* ¶ 112.
Thus, the Complaint suggests Mr. O'Leary and Mr. Palandjian may have joined the
alleged racketeering enterprise simply by "failing to conduct basic diligence" prior to
Wonder Fund's investment in HerdDogg. *Id.*

The Complaint then sets forth the only specific facts about the O'Leary Defendants:
a single phone call from Plaintiff's counsel to Mr. Palandjian in 2024 or 2025.[3] There,

---

[3]    The Complaint is inconsistent. In one paragraph it alleges the call occurred in 2024
(¶ 113), while in another it concedes the call was in 2025 (¶ 123). The evidence would
establish that no such call occurred in 2024. And even assuming that a call occurred in
2025, a single conversation in which an attorney notifies a party of potential forgery
cannot, as a matter of law, transform that party into a participant in a far-reaching RICO
conspiracy nor it can make them liable for computer hacking violations they took no part
in.

Plaintiff's counsel allegedly "confronted Mr. Palandjian" with "direct evidence of fraudulent patent assignments and other material misrepresentations made by HerdDogg to investors and regulators" and Mr. Palandjian allegedly "did not initiate any corrective action…affirmatively refused to receive or review any further information concerning Plaintiff's claims, and expressly stated that Plaintiff would never be permitted to communicate with Defendant O'Leary directly." ¶ 113.

Incredibly, Plaintiff's far-reaching claims against the O'Leary Defendants hinge on this singular event: "From that moment forward, Defendants O'Leary and Palandjian became direct participants in the fraudulent scheme to defraud Plaintiff and misappropriate her inventions and equity interest in HerdDogg." ¶ 114. *See also* ¶ 115 ("…no later than the moment Plaintiff's counsel directly informed Defendant Palandjian of the Company's fraudulent conduct—Defendants O'Leary, Palandjian, O'Leary Ventures, and Wonder Fund North Dakota became active members of the racketeering enterprise."), ¶ 123.

The Complaint then begins referring to "Defendants" in the collective and makes the conclusory allegation – "[u]pon information and belief" – that the O'Leary Defendants "either conspired with the existing enterprise members prior to or in the course of their investment in HerdDogg," before levelling another conclusory allegation "upon information and belief" that the O'Leary Defendants "engaged in a pattern of materially similar conduct in connection with their prior investment in another venture, a Montana-based entity called LandTrust…" Compl. ¶¶ 135, 137.

III.    **Plaintiff Brings 15 Claims Against the O'Leary Defendants**

Instead of articulating how the O'Leary Defendants could plausibly be liable under any of the fifteen causes of action, Plaintiff indiscriminately lumps all defendants together through a shotgun pleading and leaves it to the Court to untangle. The Complaint even brings claims for unlawful computer access and forged patents against the O'Leary Defendants—despite acknowledging they were not involved and did not even invest in HerdDogg until years after the alleged misconduct. *See* Compl. at Counts 4, 5, 6, 7, 8.

In addition, the Complaint alleges implausible claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act (Counts 1-3) and the COCCA (Counts 9-11) based entirely on a few conclusory allegations on "information and belief" that conflict with the preceding paragraphs acknowledging the O'Leary Defendants may well have been "victims" of the other defendants' alleged fraud. *Id.* ¶¶ 113, 135.

## ARGUMENT

The claims against the O'Leary Defendants should be dismissed under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) because the Court lacks personal jurisdiction over them and the Complaint relies on conclusory allegations and legal conclusions void of fact. The Complaint also violates Rule 8(a) through impermissible group pleading.

I.    **Colorado Has No Jurisdiction Over the O'Leary Defendants.**

The claims against the O'Leary Defendants must be dismissed because the Court lacks personal jurisdiction over each of them.

"The exercise of jurisdiction over a nonresident defendant comports with due process so long as there exist minimum contacts between the defendant and the forum State." *Trujillo v. Williams*, 465 F.3d 1210, 1217–18 (10th Cir. 2006) (internal quotations omitted). Minimum contacts may be established in two ways. "First, general jurisdiction

exists where the defendant has continuous and systematic contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts," and second "specific jurisdiction exists where the cause of action is 'related to' or 'arises out of' the defendant's activities within the forum state." *List Interactive, Ltd. v. Knights of Columbus*, 2017 WL 3217817, at *6 (D. Colo. July 28, 2017) (internal quotations omitted).

This inquiry "ensures that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state." *Id.* (cleaned up). Even assuming sufficient minimum contacts exist here, the Court would still need to find the "assertion of personal jurisdiction over the defendants comports with fair play and substantial justice." *Trujillo*, 465 F.3d at 1221 (cleaned up).

> ### a) <u>*The Court lacks jurisdiction over the O'Leary Defendants.*</u>

Plaintiff bears the burden of establishing that the court has personal jurisdiction over defendants. *List Interactive, Ltd.*, 2017 WL 3217817, at *6. She cannot meet this burden because none of the O'Leary Defendants have any nexus to Colorado: Kevin O'Leary resides in West Palm Beach, Florida (Compl. ¶ 18), Paul Palandjian resides in Miami, Florida (*id.* ¶ 19), O'Leary Ventures is a Delaware corporation with its principal place of business in Boston, Massachusetts (*id.* ¶15), and Wonder Fund is a North Dakota limited liability limited partnership with its principal place of business in Bismarck, North Dakota (*id.* ¶ 16).

Not one O'Leary Defendant is "at home" in Colorado and general jurisdiction is thus plainly absent. Nor does the Complaint establish specific jurisdiction. The allegations concern the O'Leary Defendants' investment (in 2023 and 2024) into HerdDogg—a company based outside Colorado when the O'Leary Defendants invested—not any

conduct directed at Colorado. At most, it alleges the O'Leary Defendants aligned with other shareholders after their misconduct. Compl. ¶¶ 7, 92, 103, 107, 115–16, 120, 123, 128, 135, 137–38. But those acts, even if true, occurred outside (and have no connection to) Colorado and cannot constitute "purposeful availment" of Colorado law. Plaintiff does not allege otherwise.

Put simply, the O'Leary Defendants have no "continuous and systematic" contacts with Colorado, and Plaintiff's claims do not "arise out of" or "relate to" any Colorado activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Forcing foreign residents, a Delaware company, and a North Dakota limited partnership into a Colorado courtroom would offend the very "traditional notions of fair play and substantial justice" that the Due Process Clause forbids. Accordingly, the Court has no jurisdiction over the O'Leary Defendants, and dismissal is required on that basis alone.

### b) *RICO's nationwide service provision and conspiracy allegations cannot save Plaintiff's claims.*

Plaintiff may try to invoke RICO's nationwide service of process provision, 18 U.S.C. § 1965(b), but that avenue is not available here. Nationwide service is permitted only where the "ends of justice" require it. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230–31 (10th Cir. 2006). Courts in this Circuit have consistently held that this standard is not met simply because a plaintiff would prefer to consolidate all defendants in a single forum, *Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015), and the Complaint is devoid of facts supporting an argument that service of process is appropriate here. *Id.*

Similarly, there is no jurisdiction over the O'Leary Defendants "under a conspiracy theory of personal jurisdiction." *Hart*, 605 F. App'x at 699. First, "for personal jurisdiction

based on a conspiracy theory to exist, the plaintiff must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Id.* Even were that the case here (it is not), the alleged conspiracy is not "directed towards th[is] forum" nor were there "substantial steps in furtherance of the conspiracy [ ] taken in th[is] forum." *Id.* at 700.

Accordingly, the Court has no jurisdiction over the O'Leary Defendants, and dismissal of all claims against them is required on this basis alone.

## II.    <u>The Complaint Fails to State a Claim Upon Which Relief Can be Granted.</u>

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief" and "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "Rule 8...does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotations omitted). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*, as it "refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Cunningham v. Bank of Am., N.A.*, 2013 WL 2455945, at *3 (D. Colo. June 6, 2013) (internal quotations omitted).

Under *Iqbal*, this evaluation requires two prongs of analysis. <u>First</u>, the court identifies "the allegations in the complaint that are not entitled to the assumption of

truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–681. <u>Second</u>, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," as a plaintiff "must offer sufficient factual allegations to raise a right to relief above the speculative level." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotations and citations omitted).

Critical here, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc. v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### a) *The Complaint is deficient*

As a threshold matter, the Complaint is facially deficient because there are simply no facts supporting any of Plaintiff's 15 claims against the O'Leary Defendants, as it focuses on alleged misconduct within HerdDogg predating their investment into the company.

The only facts alleged against any O'Leary Defendant concern a phone call where Plaintiff's attorney allegedly told Mr. Palandjian that HerdDogg insiders had – prior to any O'Leary Defendant being associated with the company – stolen Plaintiff's patent

assignments, improperly ousted her, and then misrepresented to investors that HerdDogg owned those patents. Plaintiff's allegation that Mr. Palandjian's apparent disregard of the phone call indicated he had joined a conspiracy within HerdDogg is insufficient to support her claims. Rather, it is just as likely (and in fact is more likely) that Mr. Palandjian simply declined to credit her attorney's allegations. *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (citation omitted); *Kansas Penn*, 656 F.3d at 1214 (explaining that allegations of "behavior [that is] likely to have been the result of legal, unilateral action as the product of illicit collusion" does not "plausibly suggest a conspiracy.").

Simply put, the conclusory allegations drawn from this telephone call – "[f]rom that moment forward, Defendants O'Leary and Palandjian became direct participants in the fraudulent scheme to defraud Plaintiff and misappropriate her inventions and equity interest in HerdDogg" – are not entitled to the assumption of truth and do not logically follow in any event. Compl. at ¶ 114. Because the facts alleged in the Complaint (aside from this innocuous phone call) concern conduct of others before their involvement, there are no plausible claims for relief against any of the O'Leary Defendants.

### b) *The RICO and COCCA theories collapse on every element*

Because there are no factual allegations of misconduct by the O'Leary Defendants, Plaintiff's RICO and COCCA allegations collapse on every required element.[4]

---

[4] Colorado statutes have no extraterritorial effect absent explicit contrary language, and COCCA contains none; its legislative declaration confirms an in-state focus. *See* C.R.S. § 18-17-102; *Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088, 1089–90 (Colo. 1977). Accordingly, absent Colorado-based conduct, the COCCA claims cannot stand.

Any RICO claim "must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bixler v. Foster*, 596 F.3d 751, 760–61 (10th Cir. 2010). "The COCCA and RICO statutes are similar and are generally construed according to similar principles." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2018 WL 3209116, at *7 (D. Colo. June 29, 2018), *report and recommendation adopted*, 2018 WL 3459427 (D. Colo. July 18, 2018). A RICO and COCCA plaintiff must plead each element, and the claim's predicate acts, with particularity under Rule 9(b). *Id.*

The RICO and COCCA allegations fail as to every element. The Complaint does not (and cannot) show that the O'Leary Defendants ever conducted or participated in the affairs of any supposed enterprise, as they were at most outside investors with no managerial role. It does not plead the existence of a cognizable "enterprise" at all, as the theory boils down to nothing more than HerdDogg insiders and shareholders pursuing their own business interests. It does not establish a "pattern" of racketeering activity, as the allegations describe isolated investment decisions and a stale, unrelated transaction years earlier. Further, Plaintiff cannot demonstrate standing, since she identifies no direct, concrete financial loss caused by the O'Leary Defendants' conduct, but only her frustration at losing control of the company. Finally, these claims are barred outright by the Private Securities Litigation Reform Act ("PSLRA"), as every alleged predicate act arises from securities transactions.

First, Plaintiff must sufficiently allege the O'Leary Defendants "participated in the operation or management of the RICO enterprise," which means they had "an interest in or control of" the purported enterprise. *Tal v. Hogan*, 453 F.3d 1244, 1268-9 (10th Cir.

13

2006). "'Interest in or control of' requires more than a general interest in the results of its actions, or the ability to influence the enterprise through deceit." *Id.* (citation omitted). Instead, "it requires some ownership of the enterprise or an ability to exercise dominion over it." *Id.* To avoid dismissal, "the complaint must specify the connection between [O'Leary Defendants'] racketeering activity and their interest in the ... enterprise." *Burnett v. Amrein*, 2006 WL 2859625, at *10 (D. Colo. Oct. 3, 2006), *aff'd*, 243 Fed. Appx. 393 (10th Cir. 2007).

At most, the Complaint depicts the O'Leary Defendants as outside investors who invested in HerdDogg alongside other shareholders. Nowhere does it allege that the O'Leary Defendants served as directors, officers, or managers of HerdDogg. Instead, the supposed "misconduct" consists of passive investment decisions, such as declining to indulge Plaintiff's proxy proposals or aligning with the company's existing leadership. *See* Compl. at ¶¶ 123, 124. Even the allegation that the O'Leary Defendants "ratified" prior decisions says nothing about actual dominion, ownership, or managerial control over HerdDogg or any purported "enterprise." *Id.* ¶ 124.

The Complaint's RICO claims are built entirely on empty labels. As outlined above, naked assertions that the O'Leary Defendants "joined" the conspiracy (Compl. at ¶ 139) or "became direct participants" (Compl. at ¶ 114) without factual allegations are not entitled to the presumption of truth. Courts have long rejected this type of pleading, and *Tal v. Hogan* makes clear why: a "general interest in the results" or even "the ability to influence" through investment does not amount to participation in the operation or management of an enterprise. 453 F.3d at 1268–69. Accordingly, even accepting her allegations as true, they still fail to plead the essential element of "participation."

Second, the RICO claims fail because a cognizable "enterprise" is not alleged. To plead an enterprise, one must show "(1) an ongoing organization with a decision-making framework or mechanism for controlling the group, (2) that various associates function as a continuing unit, and (3) that the enterprise exists separate and apart from the pattern of racketeering activity." *Kearney v. Dimanna*, 195 F. App'x 717, 720 (10th Cir. 2006).

The Complaint offers none of these. At most, it alleges that the O'Leary Defendants invested in HerdDogg and allegedly "aligned" with its insiders. Compl. ¶ 4 (alleging the O'Leary Defendants "joined the scheme by investing in HerdDogg and aligning with its insiders"), ¶ 124. That is not an "organization" with any framework or authority. It is simply a handful of shareholders acting in their own business interests. But "[a]ny RICO enterprise must consist of more than a group of people who get together to commit a pattern of racketeering activity." *Burnett*, 2006 WL 2859625, at *5–6. A RICO complaint must show the O'Leary Defendants were conducting the *enterprise's* affairs, not merely their *own*. *Id.* at *5. The facts in the Complaint suggest the opposite: at best, that the O'Leary Defendants acted to protect their own investments.

The Complaint also does not identify any common purpose or structure. As *Burnett* and *Kearney* both make clear, simply alleging that the O'Leary Defendants banded together to commit fraud is not enough; there must be "continuity of structure and personnel" and an existence "separate and apart" from the alleged racketeering acts. 195 Fed. Appx. at 720; 2006 WL 2859625, at *5–6. Here, the alleged "enterprise" is indistinguishable from the supposed fraud: HerdDogg insiders and investors working together on fundraising rounds. Compl. ¶ 92. By definition, that collapses the enterprise into the racketeering activity itself. *See United States v. Turkette,* 452 U.S. 576, 583

(1981) (enterprise must be an "entity separate and apart from the pattern of racketeering activity in which it engages").

Notably, courts routinely reject attempts to repackage ordinary corporate structures as RICO enterprises because a corporation and its affiliates acting through routine business relationships do not satisfy the enterprise distinctness requirement. *Marlow v. Allianz Life Insurance* explains, 2009 WL 1328636, at *5–6 (D. Colo. May 12, 2009). The allegations here—that HerdDogg, its directors, and certain outside investors advanced their own business objectives—fall squarely into that category.

Third, the RICO claims also fail because there are no factual allegations of racketeering activity made against the O'Leary Defendants, let alone a single predicate act with particularity as required by Rule 9(b) and Tenth Circuit law. *See Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989–90 (10th Cir. 1992) (requiring RICO predicate acts to be alleged with particularity and endorsing the trial court's admonition that "a plaintiff alleging fraud must know what his claim is when he files it."); *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D. Colo. 1995) ("Rule 9(b) also governs the pleading of a RICO or COCCA predicate offense which involves fraud;" thus, "a plaintiff must identify with specificity the circumstances constituting the fraud in the predicate acts.").

"Although the term 'racketeering activity' appears last in the elements list for a civil RICO claim, there is no RICO claim without there first being racketeering activity." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1248 (D. Colo. 2014). Racketeering activity is defined as "any act which is indictable" under federal law, including mail or wire fraud. *Tal*, 453 F.3d at 1261 (quoting 18 U.S.C. § 1961(1)(B)). To allege mail or wire fraud, Brandao must plead with particularity a concrete scheme to

defraud and the actual use of the mails or wires to further that scheme. *BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1102–03 (10th Cir. 1999).

Even accepting factual allegations as true, the RICO claims fail under Rule 9(b) because they are premised on vague, collective assertions rather than the particularized facts required to plead predicate acts of mail or wire fraud. It is alleged, "upon information and belief," that the O'Leary Defendants "knowingly joined and advanced the broader racketeering enterprise" and "subsequently undertook additional predicate acts that furthered and perpetuated the unlawful scheme," Compl. ¶ 135, and that "from the time of their engagement with HerdDogg," they "began participating in the use of wires and mails to transmit materially false representations to both private investors and public agencies," *id.* ¶ 136.

Fatally, the Complaint never identifies who made any misrepresentation, what was said, when or how it was communicated, or how it furthered a fraudulent scheme. *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In *Farlow*, 956 F.2d at 989–90, nearly identical RICO allegations that defendants "frequently used the mails" to circulate unspecified "false and misleading offering memoranda" were held insufficient. Likewise, in *Brooks v. Bank of Boulder*, the court found that generalized claims about mailed checks and correspondence failed to "allege the number of wires, the precise dates, and how they furthered the scheme," 891 F. Supp. 1469, 1477 (D. Colo. 1995), and in *Burnett v. Amrein*, 243 F. App'x 393, 395

(10th Cir. 2007), the court rejected allegations that "certain unknown mailings were false" for lacking any detail as to the content or falsity of the statements.

There is no allegation that a particular communication, document, or statement was misleading. As in *Burnett*, generalized references to "use of the mails and wires" fail to plead the time, place, content, or speaker of any alleged misrepresentation, and thus do not satisfy Rule 9(b)'s heightened particularity requirement. 2006 WL 2859625 at *8. In fact, because the Complaint alleges the O'Leary Defendants only invested in HerdDogg, one refused to entertain her phone call and proxy proposals, and they then "aligned" with HerdDogg's insiders, Compl. ¶¶ 113–15, 123–24, there is not even an allegation of a false representations through the mails or wires, let alone that anyone relied on such representations to their detriment.

Because the Complaint does not plead a single indictable predicate act, it cannot state a RICO claim. *See, e.g.*, *BancOklahoma*, 194 F.3d at 1103 ("Having not committed fraud, the [defendants] did not engage in any of the predicate acts defined in 18 U.S.C. § 1961(1). It follows that because the [defendants] committed no predicate acts, they cannot be found to have engaged in 'racketeering activity.'").

Fourth, even if the Complaint plausibly alleged the O'Leary Defendants engaged in certain predicate acts, the RICO claims still collapse because it fails to plead a "pattern" of racketeering activity. To establish a pattern, it must allege "at least two predicate acts" that amount to "continuing racketeering activity" and demonstrate both "continuity plus relationship." *Bixler*, 596 F.3d at 761. Predicate acts must share "the same or similar purposes, results, participants, victims, or methods of commission" or otherwise be interrelated; isolated events will not suffice. *Id*. Continuity requires more. It demands

either "a closed period of repeated conduct" or conduct "that by its nature projects into the future with a threat of repetition." *Id.* Congress limited RICO to activity that amounts to or threatens *long-term criminal activity*, not sporadic shareholder disputes. *Id.*

The Complaint does not come close to meeting this threshold. The allegations that the O'Leary Defendants ignored Plaintiff's proxy proposals, declined to act on her personal grievances, and aligned with HerdDogg's insiders are, even if true, isolated acts tied to a single investment decision, not an ongoing criminal scheme. *Id.* ¶¶ 4, 114, 123–24. As the Seventh Circuit observed, civil RICO plaintiffs "persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions," even though "RICO has not federalized every…cause of action available to remedy business deals gone sour." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992); *see also Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (The Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.").

Moreover, the Complaint's passing reference to "Wonder Fund's" purported "failed investment in LandTrust" is irrelevant. Compl. ¶ 138. That investment occurred years earlier, involved different parties and circumstances, and is untethered to HerdDogg except by Plaintiff's sheer speculation. *Id.* ¶¶ 5, 120, 137–38. Stitching together two unrelated events—a prior investment in Montana and a later dispute over a North Dakota startup—does not create the "relationship" RICO requires. The Complaint does not allege "continuity plus relationship," but instead isolated grievances over a single investment, plus a recycled complaint about an unrelated venture years earlier.

Fifth, even if the Complaint plausibly alleged participation or a pattern, Plaintiff cannot pass RICO's threshold standing requirement. To sue under RICO, Plaintiff must show she was "injured in [her] business or property by the conduct constituting the violation." *Tal*, 453 F.3d at 1254. That injury must be an actual, concrete, out-of-pocket loss—not an intangible grievance, not speculation, and not her subjective sense of being wronged. *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1232–33 (D. Colo. 2010); *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1267 (D. Colo. 2022). "[I]njury to ... reputation, dignity and emotional damages are not the type of injuries redressable by ... RICO which [is] expressly limited to injuries to 'business or property.'" *Carlson v. Town of Mountain Vill., Colorado*, 2019 WL 5819971, at *4 (D. Colo. Nov. 7, 2019) (quoting *Tal*, 453 F.3d at 1254).

The Complaint alleges no such injury to Plaintiff's business or property. Her allegations against the O'Leary Defendants boil down to complaints about being sidelined as a shareholder—blocked from proxy votes, cut out of management decisions, and denied the recognition she believes she deserves. Compl. ¶¶ 4, 124. Those are not "injuries to business or property" under RICO. They are, at most, bruised feelings and lost influence—interests courts have made crystal clear are not actionable.

The Complaint's causation problem, too, is fatal. RICO requires "some direct relation between the injury asserted and the injurious conduct alleged." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025). The "key word is *direct*." *Id.* (emphasis added). Here, the Complaint admits that whatever "injuries" Plaintiff suffered—loss of control, alleged misappropriation of inventions, shareholder dilution—originated years earlier with HerdDogg insiders, and otherwise by new investors' decision to invest in the company,

long before the O'Leary Defendants became involved. Compl. ¶¶ 4, 124. By the time the
O'Leary Defendants entered the picture in 2023, the alleged wrongs had already
occurred. *Id.* ¶¶ 4, 113. Their supposed misconduct amounts to little more than declining
to credit Plaintiff's extraordinary allegations. That is not racketeering, and it is certainly
not a "but for" or proximate cause of her claimed injuries. *CGC Holding Co., LLC v. Broad
& Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014).

Stray allegations that the O'Leary Defendants lied to North Dakota and the U.S.
Treasury "about HerdDogg's operations, job creation potential, and manufacturing
footprint" do not change the calculus. Compl. ¶ 136. Even if true, those statements were
not directed at Plaintiff and caused her no injury whatsoever. RICO requires a concrete
harm "by reason of" the predicate acts, not a generalized grievance about alleged
misrepresentations to third parties. *See CGC Holding Co., LLC*, 773 F.3d at 1088 ("Under
RICO's 'by reason of' requirement, to state a claim ... the plaintiff is required to show that
a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate
cause as well.").

Lastly, when the alleged wrongdoing targets a corporation, the law is clear that any
claim for resulting harm belongs to the company itself and must be pursued derivatively.
*See Teran v. GB Int'l, SPA*, 652 F. App'x 660, 676 (10th Cir. 2016). Courts apply this
principle equally in the RICO context: a plaintiff cannot sue under RICO for injuries that
merely reflect the corporation's losses. *See Bixler*, 596 F.3d at 757; *see also Blixseth v.
Cushman & Wakefield of Colorado, Inc.*, 2013 WL 5446791, at *6 (D. Colo. Sept. 30,
2013) (RICO standing does not exist where the individual's harm arises only because of
the firm's loss).

Here, the claimed loss of control and dilution of Plaintiff's equity stake in HerdDogg fall squarely within this derivative-injury rule, as both diminution in share value and loss of ownership rights are classic corporate injuries. *See Bixler*, 596 F.3d at 757; *Blixseth*, 2013 WL 5446791, at *6. The same is true of her attempt to recover for alleged financial harm arising from HerdDogg's purported use of the investment proceeds: any such injury would necessarily be suffered by HerdDogg itself and only then indirectly by its shareholders on a proportional basis. In short, each of the losses Brandao identifies is derivative, not direct, and therefore cannot confer RICO standing.

### c) *The PSLRA Forecloses Securities-Fraud-Based RICO Claims.*

Even if Plaintiff could otherwise state a RICO claim, her allegations are independently barred by the PSLRA. Congress amended RICO to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." Pub. L. No. 104–67, § 107, 109 Stat. 737, 758 (Dec. 22, 1995), codified at 18 U.S.C. § 1964(c); *Bixler*, 596 F.3d at 759–60. Section 10(b) of the Securities Exchange Act and Rule 10b-5 cover precisely that type of fraud "in connection with the purchase or sale" of securities. *Id*.; *Braverman v. LPL Fin. Corp.*, 2011 WL 13289787, at *4 (D.N.M. Apr. 21, 2011).

Here, the Complaint hinges on the O'Leary Defendants' alleged misrepresentations and omissions in connection with HerdDogg's investment, specifically the Series A3 and A4 offerings. Compl. ¶¶ 7, 92, 103, 107, 115–16, 120, 123, 128, 135, 137–38. It is alleged the O'Leary Defendants ignored Plaintiff's proxy demands, ratified investment decisions, and participated in misleading disclosures during those fundraising rounds. *Id*. Those are, by definition, securities-related allegations "touching upon the

purchase or sale of securities as an investor." *Superintendent of Ins. v. Bankers Life &
Cas. Co.*, 404 U.S. 6, 12–13 (1971).

The PSLRA's "in connection with" bar is interpreted broadly and encompasses
predicate acts such as mail, wire, or bank fraud undertaken in the course of securities
transactions, even if those acts might also be independently unlawful. *Bixler*, 596 F.3d at
760; *Braverman*, 2011 WL 13289787, at *5. As *Bixler* cautioned, Plaintiff cannot avoid this
bar through "surgical presentation" or artful pleading that relabels securities fraud as
racketeering. 596 F.3d at 760; *Boulware v. Baldwin*, 2012 WL 1412698, at *12 (D. Utah
Apr. 23, 2012) (rejecting RICO claims predicated on mail and wire fraud because the acts
were "undertaken in connection with the purchase of a security"). The attempt here to
repackage alleged fundraising misrepresentations as RICO predicate acts is exactly the
type of runaround Congress sought to prevent.[5]

### III.    The Complaint Relies on Impermissible Group Pleading.

Rule 8 requires more than conclusory labels; it requires that the complaint "make
clear exactly *who* is alleged to have done *what* to *whom*." *Robbins v. Oklahoma*, 519 F.3d
1242, 1249–50 (10th Cir. 2008) (emphasis in original). Group pleading violates this
standard when, as here, a plaintiff first identifies specific actors who allegedly committed
the misconduct, then improperly extends those allegations to unrelated defendants
through collective references to "Defendants." *Carrado v. Daimler AG*, 2018 WL 4565562,

---

[5]    Brandao's RICO conspiracy claim under § 1962(d) fails for the same reason as
her substantive RICO counts. "[A]ny claim under § 1962(d) based on a conspiracy to
violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the
substantive claims are themselves deficient." *Condict v. Condict*, 826 F.2d 923, 927 (10th
Cir. 1987); *see also Tal*, 453 F.3d at 1270; *BancOklahoma Mortgage Corp.*, 194 F.3d at
1103. Because she has failed to allege any viable predicate RICO violation, her
conspiracy allegations fail as a matter of law.

at *3–4 (D. Colo. Sept. 24, 2018); *Snyder v. ACORD Corp.*, 2016 WL 192270, at *3 (D. Colo. Jan. 15, 2016), *aff'd*, 684 F. App'x 710 (10th Cir. 2017).

The Complaint does exactly that. Plaintiff initially identifies who allegedly committed the core misconduct: Defendant Faust supposedly directed Defendants Moyes, Hammar, and "other co-conspirators" to hack into her email and DocuSign accounts in 2021 to forge patent assignment documents. She repeats this with both the '130 and '626 patents. Compl. ¶¶ 55–60, 63–69. By her own admission, the alleged unauthorized access and forgeries were carried out by those actors—not the O'Leary Defendants – long before the O'Leary Defendants were involved with HerdDogg. *Id.* ¶ 4.

Yet when asserting CFAA claims, a patent infringement claim, civil theft and conversion claims, and related counts, the Complaint abandons those factual distinctions and pleads broadly that "Defendants" committed each violation. *Id.* at Counts 4-8, 12-15. That is classic and impermissible group pleading and courts routinely reject complaints that allege facts against certain defendants but then use collective references to extend liability to everyone. *See L5L Indus., Inc. v. Kiss Indus., LLC*, 2022 WL 704705, at *2–3 (D. Colo. Jan. 21, 2022) (dismissing claims where allegations against one defendant were imputed wholesale to others without supporting facts).

Here, no factual allegations connect the O'Leary Defendants to the alleged computer intrusions, forged signatures, or theft of intellectual property, as the narrative places that conduct at the feet of others. Claims cannot survive when one set of facts is pled against specific defendants, but then alleged against others.

## **CONCLUSION**

When stripped of its rhetoric and conclusory allegations, the Complaint describes a shareholder dispute brought by a disgruntled founder against her former company, all

of which occurred years before the O'Leary Defendants invested in the company. As is clear from the far-reaching and conclusory allegations in the Complaint – and Plaintiff's and her counsel's frenzied social media activity upon its filing – the O'Leary Defendants were included in this shareholder dispute to generate publicity without regard to the effects on their reputation. The Court should bring this misuse of the judicial process to an end and dismiss all claims against the O'Leary Defendants with prejudice.

Respectfully submitted,

                                              **NEIMAN MAYS FLOCH & ALMEIDA PLLC**

                                              <u>/s/ Jeffrey A. Neiman</u>
                                              Jeffrey A. Neiman
                                              Florida Bar No. 544469
                                              jneiman@nmfalawfirm.com
                                              Brandon S. Floch
                                              Florida Bar No. 125218
                                              bfloch@nmfalawfirm.com
                                              Jordan Esteban
                                              Florida Bar No. 1025386
                                              jesteban@nmfalawfirm.com
                                              One Financial Plaza
                                              100 Southeast Third Avenue
                                              Suite 805
                                              Fort Lauderdale, Florida 33394
                                              Telephone: (305) 400-4269
                                              Fax: (954) 688-2492

                                              Mark L. Williams
                                              Williams & Serio
                                              1401 Lawrence St., Suite 1600
                                              Denver, CO 80202
                                              Phone: 303.656.9919
                                              Email: mlw@williamsserio.com

                                              *Counsel for Defendants O'Leary, Palandjian, O'Leary Ventures, and Wonder Fund North Dakota*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

John Oleske
Law Office of John Oleske
243 Main Street, Suite 50
New Paltz, NY 12561
john@johnoleskelaw.com

*Attorney for Plaintiff*


Andrew P. Shelby
Carolyn E. Isaac
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
Phone:        312.596.5884
              312.596.5871
andrew.shelby@michaelbest.com
ceisaac@michaelbest.com

Nathan C. Dillon
Michael Best & Friedrich LLP
675 15th Street, Suite 2000
Denver, CO 80202
Phone:        303.536.1187
ncdillon@michaelbest.com

*Attorneys for Defendants HerdDogg, Inc., Lou Faust,
Andrew Uden, Shane Schulz, Rob Schultz,
Edward Hamburg, Jason Wrone, Jon Moyes,
Jeffrey Mitchel, Scott Shambo, and Beth Hammar*


/s/ Jeffrey A. Neiman